Alfredo M. Morales, Esq. [SBN 69204]
Law Offices of Morales & Leaños
75 East Santa Clara Street, Suite 250
San José, CA  95113
(408) 294-5400

Counsel for Jose Sedano-Perez

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 08-00027-1 RMW |
| Plaintiff, | **SENTENCING MEMORANDUM** |
| vs. | |
| JOSE SEDANO-PEREZ, | Date   : 09-02-08 |
| Defendant. | Time   : 9:00 a.m. |
| | Judge  : Hon. Ronald M. Whyte |

**Introduction**

Jose Sedano-Perez entered a plea of guilty to a single count information filed on January 23, 2008 alleging a violation of 8 U.S.C. §1326 – Illegal Re-Entry Following Deportation. Mr. Sendano-Perez pled open and not pursuant to any plea agreement on June 30, 2008.

*Paragraph 14* of the PSR suggests that the defendant's offense level should be increased pursuant to USSG §2L1.2(b)(1)(A)(i) which provides for a 16 level increase where a defendant previously was deported after he sustained a felony "drug trafficking" conviction for which a sentence in excess of 13 months was imposed. This position  is based on a California Health and Safety Code §11383(c)(1) conviction suffered by the defendant in 2002.

The defense submits that the principle's enunciated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) prohibit the Court from imposing the subject enhancement.

==========================================================================

**DEFENDANT'S SENTENCING MEMORANDUM**

Page 1 of  7

The defense further submits that departures are warranted based on "duress," "sentencing disparity," harsher treatment received by alien prisoners, and the fact that the defendant will be deported.

### Base Offense Level Calculation: Specific Offense Characteristic

The application of USSG §2L1.2(b)(1)(A)(i) for the subject drug conviction is inappropriate for two reasons: First, the subject conviction cannot be used to support the USSG §2L1.2(b)(1)(A)(i) enhancement if the fact of the conviction is not admitted or proven to a jury beyond a reasonable doubt. [See *Shepard v. United States*, 544 U.S. 13 (2005);*Apprendi v. New Jersey*, 530 U.S. 466 (2000).] Counsel is aware of *Almendariz -Torrez v. United States*, 523 U.S. 224 (1998) as it pertains to the issue of the use of prior convictions, but contends that *Shepard* and *Apprendi* effectively overrule *Almendarez-Torres* or at least create constitutional doubt as to its continuing validity. [*"Almendarez-Torres*, ... , has been eroded by this Court's subsequent *Sixth Amendment* jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided." *Shepard v. United States*, 544 U.S. 13, 27 (2005) (conc.opn. of Thomas, J.)]

Second, based on an *Apprendi* he Ninth Circuit recently concluded that the dates of a previous felony conviction and of a previous removal from the United States, subsequent to that conviction, must be alleged in the indictment and proved to a jury for the defendant to be subject to an increased sentence under *8 U.S.C. § 1326(b)*. [*United States v. Salazar-Lopez*, 506 F.3d 748, 749-750 (9th Cir.2007).] In so holding, the Court reasoned that the fact that triggered the statutory maximum of §1326(b) was the sequence of prior conviction and the defendant's two removals, not the mere fact of the prior conviction: "As such, the date of the removal, or at least the fact that *Salazar-Lopez* had been removed after his conviction, should have been alleged in the indictment and proved to the jury. The failure to due so was an *Apprendi* error." [*Id.* at 752 .] The information in the instant case alleges three different dates of removal but does not allege the temporal relationship between any of the three removals and the subject alleged predicate conviction, and therefore implicates the *Apprendi* error recognized in *Salazar-Lopez.*

==================================================================================

**DEFENDANT'S SENTENCING MEMORANDUM**

Accordingly, in view of the *Apprendi* errors discussed herein, the correct Total Offense Level is 6 (Base Offense Level of 8 minus 2 for Acceptance of Responsibility).

**The Proposed PSR Guideline Range Computation is not Correct**

The PSR concludes at *Paragraph 45* that the appropriate guideline range for imprisonment is 70-87 months. This is correct if the Offense level is increased by 16 levels pursuant to §2L1.2(b)(1)(A). On the other hand if §2L1.2(b)(1)(A) is not applicable as argued herein, then based on a total offense level of 6 and criminal history Criminal History Category of V the guideline range for imprisonment is 6-12 months.

**A Departure is Warranted Under 5K2.12**

Mr. Sedano-Perez returned to the United States because his life was endangered as a result of assistance related to drug investigations he provided to law enforcement in Fresno. The fact that he had provided assistance was disclosed and as a direct result his life was threatened. Threats to his life were communicated to his family in Mexico. He has been told that if he returns to Mexico he will be killed. Consequently, Mr. Sedano-Perez committed the subject offense by returning to the United States to avoid certain death in Mexico. Clearly he was acting under duress.

The defendant's A file confirms that in 2003 he was "paroled" into the United States for 90 days in the interests of justice at the request of the Fresno Methamphetamine Task Force and then terminated for a Failure to Appear based on a traffic violation. It defense counsel's understanding that the termination occurred only after he provided substantial assistance to the Fresno Methamphetamine Task Force. [See Record of Deportable/Inadmissible Alien, Dated 12/19/2003, Exhibit A.)

USSG § 5K2.12. (Coercion and Duress) provides as follows:

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion, blackmail, or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical

injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. Notwithstanding this policy statement, personal financial difficulties and economic pressures upon a trade or business do not warrant a downward departure.

"The standard for a § 5K2.12 duress departure is imperfect duress, that is, duress which is not 'a complete defense.'" [*United States v. Pinto*, 48 F.3d 384, 388, emphasis added.; see also *United States v. Cheape*, 889 F.2d 477, where the court stated, "Evidently the Commission had in mind the showing of duress less than what constitutes a defense to a crime; for if the defense were 'complete,' there would have been no crime requiring a sentence." (at 480).]

Given that Mr. Sedano-Perez violated our immigration laws by returning after being deported to avoid death and the reasons why he was placed in this position, it seems only fair that his circumstances should be acknowledged here in the form of a downward departure. It is also important to note that cases discussing imperfect duress hold that the injury threatened need not be imminent and further that the guidelines emphasize not only the reasonableness of the defendants actions, but the defendant's subjective evaluation of his circumstances.[See e.g., *United States v. Johnson*, 956 F.2d 894, 898 (9th Cir.1992)]

### Discussion of 18 U.S.C. §3553(a) Factors

Under *United States v. Booker* (2005) 125 S.Ct. 738, it is clear that the courts may no longer uncritically apply the guidelines. The PSR did not identify any factors that would warrant a sentence outside applicable advisory guideline range. Counsel contends that in this case the issue of "*sentence disparity*" should be carefully considered in determining a sentence that is sufficient, but not greater than necessary to comply with the statutory directions set forth in 18 U.S.C. §3553(a).

### A Variance is Warranted to Avoid Sentencing Disparities

The Fast Track offer in this case was 46 months. The low end of the PSR calculation is substantially more than the Fast Track offer. It seems apparent that most defendants in the position of Mr. Sedano-Perez would receive a lesser sentence because of a Fast-Track agreement. Thus the guideline range as calculated in *Paragraph 45*, i.e., 70-87 months, does not reflect the sentences of defendants who committed similar crimes and have records similar to

Mr. Sedano-Perez. Under these circumstances the need to avoid unwarranted sentence disparities among defendants with similar records should be considered. [18 U.S.C. §3553(a)(6)]

It is correct that Mr. Sedano-Perez chose not to accept the Fast-Track offer and instead chose to plead open and keep his right to argue for a lesser sentence and to appeal. The factors that influenced his decision are well known to all defense attorneys. Ignorance and distrust play a huge role. This is particularly true among defendants who are Mexican nationals facing 1326 prosecutions who have never been prosecuted federally do not understand and cannot accept that the federal system of prosecution is different from the state system and in many respects harsher. This lack of understanding contributes to the distrust of defense counsel, particularly when defense counsel is court appointed. In the case of 1326 prosecutions ignorance and distrust is further fueled by the frustration felt by defendants who have just completed a state court sentence and cannot understand why their "mere presence" in this country constitutes a crime when from their perspective they have harmed no one. The Sentencing Guidelines are also huge barriers to the resolution of these cases because defendants find it unbelievable that they are being punished again for past crimes which in their view have already been paid for with incarceration. The common refrain by Mexican nationals is "*Ya pague por ese caso,*" meaning "I already paid for that crime." So it is the case that defendants, particularly in 1326 cases, cannot understand the logic of accepting a Fast-Track offer even when confronted with the guideline exposure inherent in an open plea or post trial. If this were not enough to impede resolutions of 1326 cases, there is also the fact that there are many "jail house lawyers" inside the main jail who do not hesitate to counsel their cell mates with tales based on their own sense of fairness, cases they only heard about and on an incomplete or flawed understanding of the facts and applicable law.

Setting aside the factors that influenced his decision, one must also consider the "benefits" that Mr.Sedano-Perez received by way of his open plea. One benefit is that he could argue for a lesser sentence. Another benefit is that he can appeal. In most cases, as here, these two benefits are illusory. The reality is that the only one who really benefitted was the system.

==============================================================================

**DEFENDANT'S SENTENCING MEMORANDUM**

Both the government and court obtained a plea without the burden of a trial. Except for retaining the right to appeal, there is little difference between what burden is placed on the judicial system by acceptance of a Fast-Track offer and an open plea. In both situations the end result is that there is an early resolution that avoids the expenses and efforts associated with a trial. Certainly the fact that Mr. Sedano-Perez retained the right to argue for a lesser sentence created only a minimal extra burden on the government and court. No doubt the early plea here substantially satisfied whatever policies support the Fast-Track system. If Mr. Sedano-Perez were to waive his right to appeal, then the differences between accepting the Fast Track offer and an open plea are virtually non-existent. Defense counsel is advised that Mr. Sedano-Perez will waive his right to appeal.

Given foregoing discussion and in particular the disparities between the resulting sentences it is submitted that a variance is justified here and that a sentence no greater than the Fast-Track offer of 46 months would be appropriate and sufficient under the facts of this case.

**Two Other Grounds Warranting a Variance**

In addition to "sentencing disparity" the Court should also consider two other factors: (1) A deportable alien is subjected to harsher confinement as he may participate in the BOP's drug treatment, but cannot benefit from early release and community confinement programs that are otherwise available to the general population; and (2) this defendant will no doubt be deported after completing his sentence.

///
///
///
///
///
///
///

**DEFENDANT'S SENTENCING MEMORANDUM**

Page 6 of 7

**Conclusion**

Court should hold that application of the enhancements would violate the defendant's Sixth Amendment rights under *Apprendi*.

The defense requests that the Court depart from the Guideline calculations proposed by the PSR on the basis of : duress, sentencing disparity; harsher treatment received by alien prisoners; and the fact that the defendant will be deported.

Respectfully submitted,

Dated: August 25, 2008

/s/
Alfredo M. Morales, Esq.
Counsel for Defendant
Jose Sedano-Perez

---

**DEFENDANT'S SENTENCING MEMORANDUM**

# EXHIBIT "A"

**U.S. Department of Justice**
Immigration and Naturalization Service

**Record of Deportable/Inadmissible Alien**

| Family Name (CAPS) | First | Middle | | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|---|
| PEREZ-Sedeno, | Jose | | | M | BLK | BRO | MED |

| Country of Citizenship | Passport Number and Country of Issue | Case No: File Number | | Height | Weight | Occupation |
|---|---|---|---|---|---|---|
| MEXICO | | FRS0412000037 A079 187 896 | | 71 | 180 | LABORER |

| U.S. Address |
|---|
| 1308 E. LORENA APT 101 FRESNO, CALIFORNIA 93706 |

Scars and Marks: **See Narrative**

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F.B.I. Number | Marital |
|---|---|---|---|
| 07/07/2003, Unknown Time, At SYS, PWA(AFOOT) | 36 | 746368VB3 | X Married |

| Number, Street, City, Province (State) and Country of Permanent Residence | Method of Location/Apprehension |
|---|---|
| DOMECILIO CONOCIDO APATZINGAN, MICHOACAN MEXICO | OA 511.2.1 |

| Date of Birth | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|
| 11/20/1967  Age: 36 | 12/19/2003 | LIV/FRS | Fresno, CA | 12/19/2003 1300 |

| City, Province (State) and Country of Birth | AR | Form: (Type and No.) | Lifted | Not Lifted | By |
|---|---|---|---|---|---|
| APATZINGAN, MICHOACAN, MEXICO | X | | | | STEVEN R. MUNOZ |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| | | Parolee | IN INSTITUTION |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|
| | | 1 MONTH TO 1 YEAR |

| Immigration Record | Criminal Record |
|---|---|
| POSITIVE - See Narrative | See narrative |

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) Nationality: MEXICO | Number and Nationality of Minor Children |
|---|---|
| CARRANZA, Luz Ydira SAS | 2 MEXICO 1 USC |

| Father's Name, Nationality, and Address, if Known Nationality: MEXICO | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| PEREZ, Antonio SAS | SEDENO, Guadalupe DECEASED |

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted? Yes X No | INS Systems Checks CIS Positive | Charge Code Word(s) I2C |
|---|---|---|---|

| Name and Address of (Last)/(Current) U.S. Employer | Type of Employment | Salary Hr. | Employed from/to |
|---|---|---|---|

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

FIN #: 467762

OTHER ALIASES KNOWN BY
SEDENO- Perez, JOSE

SCARS, MARKS AND TATTOOS
SCAR WRIST, LEFT

MOTHER'S NATIONALITY
MEXICO

Narrative Title: Record of Deportable/Excludable Alien
Narrative Created by MUNOZ

The Subject: Jose PEREZ-Sedeno AKA: Jose SEDENO-Perez, AKA: Jose PEREZ is a 36 year old male, who admits to being a native and citizen of Mexico deriving that status through birth in Apatzingan, Michoacan, Mexico. On July 7, 2003 PEREZ file number A79187896 was paroled into the United States at San Ysidro, California for 90 days in the interest of Justice at the request of the Fresno Methamphetamine Task Force (HIDTA or FMTF). On December 11, 2003 the FMTF submitted a letter to the Department of Homeland Security, Immigration and Customs Enforcement in San Francisco, California requesting that PEREZ'S status be terminated. The FMTF letter addressed that fact that PEREZ had been arrested on a warrant issued by Fresno County Court for failing to appear and had been cited on a

Alien has been advised of communication privileges. ___(Date/Initials)

STEVEN R. MUNOZ
SENIOR PATROL AGENT
(Signature and Title of INS Official)

| Distribution: | Received: (Subject and Documents) (Report of Interview) |
|---|---|
| A FILE CPA/LIV PAIC/FRS | Officer: STEVEN R. MUNOZ on December 19, 2003 at 1512 (time) |
| | Disposition: Warrant of Arrest/Notice to Appear |
| | Examining Officer: RAFAEL L. VELARDE |

**U.S. Department of Justice**
Immigration and Naturalization Service

Continuation Page for Form I-213

| Alien's Name | File Number | Date |
|---|---|---|
| PEREZ-Sedeno, Jose | Case No: FRS0412000037<br>A079 187 896 | 12/19/2003 |

traffic violation for driving without a license. Because of the aforementioned events, the FMTF found that was in conflict with the contractual interest of the Fresno Methamphetamine Task Force.

On December 17, 2003 TFA Eddie Rodriguez notified me about PEREZ and that fact that he was in custody at Fresno County Jail. Based on the information gathered on PEREZ and the CIS query, I authorized an Inmate Detainer on PEREZ booking number 0336028 at Fresno county Jail and would interview him on the following day. On December 18, 2003 Fresno County Jail notified the Border Patrol in Fresno, that PEREZ was to be remanded our custody on December 19, 2003 pursuant to the detainer.

On December 18, 2003 hearing of PEREZ'S pending release, I attempted to contact SA Dave Moss in San Francisco to seek special instructions. I was unable to make direct contact with anyone in San Francisco but left a voice message to SSA Mark Wagner. That afternoon San Francisco faxed the entire contents in PEREZ'S alien file and are contained in this file.

While interviewing PEREZ he commented that, he was owed money in excess of a thousand dollars by Fresno Narcotics Agent Jesus Santillan. I contacted Santillan who confirmed that was PEREZ was saying was true but that he was not in the local area at the time to get approval from his supervisors to dispense money. Santillan stated that on Monday, December 22, 2003 he would deliver the money to PEREZ wife in Fresno, PEREZ was told of the plan and was in agreement with the decision.

On June 4, 2002 in the Superior Court of California County of Fresno, Central Division case number F02901219-6, PEREZ was convicted for the offense of Possession with Intent to Manufacture Methamphetamine, in violation of Section 11383(c)(1) of the California Health and Safety Code.

CIS: A79 187 896.
California Criminal history #A23451111
FBI: 7463668VB3

| Signature | Title |
|---|---|
| STEVEN R. MUNOZ | SENIOR PATROL AGENT |

2 of 2 Pages

Form I-831 Continuation Page (Rev. 6/12/92)